## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BENCH WALK LIGHTING LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 18-1732-RGA |
| | § | |
| OSRAM SYLVANIA, INC.; OSRAM | § | |
| LICHT AG; OSRAM GMBH; OSRAM | § | |
| OPTO SEMICONDUCTORS GMBH | § | |
| & CO.; OSRAM OPTO | § | |
| SEMICONDUCTORS, INC.; | § | |
| LEDVANCE GMBH; LEDVANCE LLC; | § | |
| LED ENGINE, INC., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF BENCH WALK LIGHTING'S RESPONSE TO DEFENDANTS OSRAM SYLVANIA, INC.'S, OSRAM OPTO SEMICONDUCTORS, INC.'S, AND LEDVANCE LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

GRANT & EISENHOFER P.A.
Eric J. Evain (# 3729)
Edward M. Lilly (# 3967)
123 Justison Street
Wilmington, DE 19801
Tel:  302-622-7000
Fax:  302-622-7100
eevain@gelaw.com
elilly@gelaw.com

Of counsel:

William M. Parrish
*Pro Hac Vice Forthcoming*
Henning Schmidt
*Pro Hac Vice Forthcoming*
Victor G. Hardy
*Pro Hac Vice Forthcoming*
HARDY PARRISH YANG, LLP
Spicewood Business Center
4412 Spicewood Springs Rd., Suite 202
Austin, Texas 78759
BParrish@hpylegal.com
HSchmidt@hpylegal.com
VHardy@hpylegal.com

*Attorneys for Plaintiff*
*Bench Walk Lighting LLC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION ....................................................................................................... 1

II.     DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED AS MOOT............... 1

III.    DIRECT INFRINGEMENT ....................................................................................... 2

        A.      THE FAC PROPERLY PLEADS DIRECT INFRINGEMENT ............................................ 2

                1.      Count 1 ('524 patent).................................................................... 4

                2.      Count 2 ('658 patent).................................................................... 4

                3.      Count 3 ('428 patent).................................................................... 6

                4.      Count 4 ('182 patent).................................................................... 7

                5.      Count 8 ('287 patent).................................................................... 8

                6.      Count 10 ('644 patent).................................................................. 9

                7.      Count 14 ('338 patent)................................................................ 10

IV.     INDIRECT INFRINGEMENT.................................................................................... 10

        A.      THE FAC SUFFICIENTLY ALLEGES INDIRECT INFRINGEMENT BY PLAUSIBLY
                ALLEGING KNOWLEDGE, SPECIFIC INTENT, AND DIRECT INFRINGEMENT FOR
                EACH COUNT .......................................................................................................... 11

V.      WILLFUL INFRINGEMENT ..................................................................................... 14

        A.      PRE-SUIT KNOWLEDGE BASED ON PATENT PROSECUTION AND PRIOR
                LITIGATION ............................................................................................................ 14

        B.      POST-SUIT KNOWLEDGE BASED ON PLAINTIFF'S PRIOR COMPLAINT.................... 15

VI.     ENTITY SPECIFIC ALLEGATIONS ........................................................................ 16

        A.      LEGAL STANDARD .................................................................................................. 16

        B.      THE FAC IDENTIFIES EACH OSRAM DEFENDANT'S ROLE IN THE ALLEGED
                INFRINGEMENT ...................................................................................................... 17

VII.    CONCLUSION............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acantha LLC v. Depuy Synthes Sales, Inc.*,
  No. 15-1257, 2016 WL 8201781 (E.D. Wis. July 28, 2016) ............................................17, 18

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
  No. 14-2147, 2015 WL 5118509 (N.D. Cal. Aug. 31, 2015) ..................................................19

*In re Bill of Lading*,
  681 F.3d 1323 (Fed. Cir. 2012) .............................................................................................10

*BlackBerry Ltd. v. Nokia Corp.*,
  No. 17-00155-RGA, 2018 WL 1401330 (D. Del. May 20, 2018) ..........................................15

*Callwave Comm's LLC v. AT&T Mobility LLC*,
  No. 12-01701-RGA, 2014 WL 5363741 (D. Del. Jan. 28, 2014) ..........................................16

*Chalumeau Power Sys. LLC v. Alcatel–Lucent*,
  C.A. No. 11-1175-RGA, 2012 WL 6968938 (D. Del. July 18, 2012) ....................................18

*Crypto Research, LLC v. Assa Abloy, Inc.*,
  236 F. Supp. 3d 671 (E.D.N.Y. 2017) ...................................................................................13

*DermaFocus LLC v. Ulthera, Inc.*,
  201 F.Supp.3d 465 (D. Del. 2016) ......................................................................................6, 14

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
  888 F.3d 1256 (Fed. Cir. 2018) ...............................................................................................3

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
  935 F. Supp. 2d 772 (D. Del. 2013) .......................................................................................13

*FO2GO LLC v. KeepItSafe, Inc.*,
  No. 18-807-RGA, 2019 WL 1615398 (D. Del. Apr. 16, 2019) ..............................................10

*Groove Digital, Inc. v. King.com, Ltd.*,
  No. 18-00836-RGA, 2018 WL 6168615 (D. Del. Nov. 26, 2018) .......................15, 16, 17, 19

*Hudak v. Berkley Grp., Inc.*,
  No. 13-89, 2014 WL 35466 (D. Conn. Jan. 23, 2014) ............................................................19

*K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*,
  714 F.3d 1277 (Fed. Cir. 2013) .............................................................................................6, 9

*KOM Software Inc. v. NetApp, Inc.*,
  No. 1:18-CV-00160-RGA, 2018 WL 6167978 (D. Del. Nov. 26, 2018) ...............................14

*Kyowa Hakka Bio, Co. v. Ajinomoto Co.*,
  No. 17-313-MSG, 2018 WL 834583 (D. Del. Feb. 12, 2018)..................................................15

*M2M Sol'ns LLC v. Telit Comm's PLC*,
  No. 14-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015) ..................................... *passim*

*McDermott v. Clondalkin Grp., Inc.*,
  649 F. App'x 263 (3rd Cir. 2016).........................................................................................5

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
  420 F.3d 1369 (Fed. Cir. 2005)...........................................................................................10

*Mentor Graphics Corp. v. EVE–USA, Inc.*,
  851 F.3d 1275 (Fed. Cir. 2017)...........................................................................................16

*Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.*,
  No. 14-874-SLR, 2015 WL 4036951 (D. Del. Jul. 1, 2015) ..........................................5, 6, 10

*MGM Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005)...........................................................................................................10

*MONEC Holding AG v. Motorola Mobility, Inc.*,
  897 F.Supp.2d 225 (D. Del. 2012).......................................................................................15

*N. Star Innovations, Inc. v. Micron Techs., Inc.*,
  No. 17-506-LPS, 2017 WL 5501489 (D. Del. Nov. 16, 2017)..................................................3

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018)....................................................................................2, 3, 8

*Nestle Purina PetCare Co. v. Blue Buffalo Co. Ltd.*,
  No. 14-859, 2015 WL 1782661 (E.D. Mo. Apr. 20, 2015) ....................................................19

*Philips v. ASUSTeK Computer Inc.*,
  No. 15-1125-GMS, 2016 WL 6246763 (D. Del. Oct. 25, 2016)...............................................2

*Promos Techs., Inc. v. Samsung Elecs. Co.*,
  No. 18-307-RGA, 2018 WL 5630585 (D. Del. Oct. 31, 2018) ............................................2, 9

*Smith v. Bank of America, N.A.*,
  No. 12-724, 2014 WL 897032 (M.D. Fla. Mar. 6, 2014) ........................................................1

*StrikeForce Technologies, Inc. v. PhoneFactor, Inc. & First Midwest Bancorp, Inc.*,
  No. 13–490–RGA–MPT, 2013 WL 6002850 (D. Del. Nov. 13, 2013)...................................20

iii

*Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
No. 14-1268-SLR, 2016 WL 7230504 (D. Del. Dec. 14, 2016)................................................5

*Telebrands Corp. v. 1ByOne Products Inc.*,
No. 17-997-SRF, 2017 WL 5593785 (D. Del. Nov. 21, 2017) ................................................1

*Valinge Innovation AB v. Halstead New England Corp.*,
No. 16-1082-LPS, 2018 WL 2411218 (D. Del. May 29, 2018) ............................................16

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009)............................................................................................13

**Statutes**

35 U.S.C. § 271(a) ....................................................................................................................2

**Other Authorities**

Fed. R. Civ. Proc. 8..................................................................................................16, 17, 18

Fed. R. Civ. Proc. 12(b) ............................................................................................................1

Fed. R. Civ. Proc. 11(b)(3) .......................................................................................................5

Fed. R. Civ. Proc. 12(b)(6) .......................................................................................................2

## I.      INTRODUCTION

Plaintiff Bench Walk Lighting LLC's ("Plaintiff") First Amended Complaint (D.I. 13; "FAC") properly pleads in detail direct, indirect, and willful infringement of each of the 14 patents-in-suit, containing over 100 paragraphs of allegations in 14 element-by-element analyses, including annotated photographs and diagrams.  In response, Defendants simultaneously filed an Answer (D.I. 16) and a Partial Motion to Dismiss (the "Motion") (D.I. 14) that is based on flawed interpretations of law, including cases that have been overruled.  Nonetheless, Plaintiff has notified Defendants that it intends to file a Motion for Leave to submit a Second Amended Complaint ("SAC") with even more factual support, thereby eliminating any possible concerns that Defendants may legitimately have.  An explanation of how the SAC addresses these potential concerns is set forth in the footnotes herein.  Accordingly, Defendants' Motion should be denied.

## II.      DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED AS MOOT

Defendants mooted their Motion by filing an Answer (D.I. 16) at the same time.  Federal Rule 12(b) requires that "[a] motion asserting any of these defenses must be made <u>before</u> pleading if a responsive pleading is allowed."  F.R.C.P. 12(b) (emphasis added).  As this Court has held, "[w]hen an answer is filed prior to the resolution of a motion to dismiss, the motion to dismiss becomes moot."  *Telebrands Corp. v. 1ByOne Products Inc.*, No. 17-997-SRF, 2017 WL 5593785, at *4 (D. Del. Nov. 21, 2017); *Smith v. Bank of America, N.A.*, No. 12-724, 2014 WL 897032, at *22 (M.D. Fla. Mar. 6, 2014) ("An Answer filed <u>contemporaneously</u> with the filing of a Motion to Dismiss renders the motion moot and makes it 'procedurally impossible for the Court to rule on the motion to dismiss.'") (emphasis added).  This is not a situation where Defendants' Motion touches on only some of the Counts in Plaintiff's complaint.  By seeking dismissal of all allegations of willful and indirect infringement, Defendants' Motion addresses all 14 Counts in Plaintiff's

FAC. If the Court agrees, there is no need to read further. Nonetheless, Plaintiff still requests leave to submit its SAC, as it further elaborates on Defendants' infringements.

## III.   DIRECT INFRINGEMENT

To sufficiently plead direct infringement, a plaintiff need only allege sufficient facts to show a reasonable inference that a defendant "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). "Under *Twombly* and *Iqbal*, the use of exemplary pleading of claims is sufficient to satisfy Rule 12(b)(6)." *Promos Techs., Inc. v. Samsung Elecs. Co.*, No. 18-307-RGA, 2018 WL 5630585, at *2 (D. Del. Oct. 31, 2018). Similarly, "under *Twombly* and *Iqbal*, pleading an exemplary product is sufficient to satisfy Rule 12(b)(6)." *Id.* at *4. Thus, providing "specific examples of at least one product [a defendant] manufactures or sells that contains mechanisms or processes performing the identified functions, and specific examples of the class of products which also contain" those functions is sufficient to satisfy the pleading requirements under Rule 12(b)(6). *Philips v. ASUSTeK Computer Inc.*, No. 15-1125-GMS, 2016 WL 6246763 at *4 (D. Del. Oct. 25, 2016).

### A.   THE FAC PROPERLY PLEADS DIRECT INFRINGEMENT

A complaint must contain factual allegations sufficient to put the defendant on notice of the nature of the claims. Defendants surely know this, yet repeatedly complain that the FAC does not prove Plaintiff's allegations. That is not the law. Indeed, the Federal Circuit recently noted that a complaint does not have to plead facts establishing "each element" of an asserted claim or provide "evidentiary support" to prove its case:

> Nalco need not "prove its case at the pleading stage." *Bill of Lading,* 681 F.3d at 1339 (citing *Skinner,* 562 U.S. at 529-30, 131 S.Ct. 1289). The complaint must place the "potential infringer ... on notice of what activity ... is being accused of infringement." *K-Tech,* 714 F.3d at 1284.

> Nalco's pleading clearly exceeds the minimum requirements under Rule 12(b)(6), especially as "the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Bill of Lading*, 681 F.3d at 1335. The district court's failure to credit these allegations as true is reversible error.

*Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (some citation omitted) (emphasis added). Claim charts or detailed infringement contentions are not required. *N. Star Innovations, Inc. v. Micron Techs., Inc.*, No. 17-506-LPS, 2017 WL 5501489, at *3 (D. Del. Nov. 16, 2017). The mere allegation "that the accused products meet 'each and every element of at least one claim of the [patents-in-suit], either literally or equivalently'" is sufficient. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). In *Disc Disease*, like in the case *sub judice*, the supporting factual allegations included identification of the accused products, as well as corresponding photos. *Id.* The Federal Circuit held that this was "enough to provide VGH Solutions fair notice of infringement of the asserted patents." *Id.*

Plaintiff's FAC identifies an exemplary accused product and at least one infringed claim from each patent. The FAC goes beyond the minimal pleading requirements by providing element-by-element analyses of infringement for each claim including diagrams, photos, and explanatory text to provide further notice of infringing products. Despite all this, Defendants complain that in seven of Plaintiff's 14 counts, the allegations of direct infringement fail to include sufficient factual allegations to show that at least one identified product infringes each limitation of at least one claim of each asserted patent. Defendants' Opening Brief in Support of Their Partial Motion to Dismiss ("DOB") (D.I. 15) at 12. Defendants are wrong.[1]

---

[1] Defendants' baseless assertion that Plaintiff did not perform an adequate pre-suit investigation is also specious and false. DOB at 3 n. 4.

1.       **Count 1 ('524 patent)**

Defendants argue that the pictures contained in the claim chart are of different products than those accused of infringement and therefore do not provide "evidence…to demonstrate" infringement as to *all* elements of the claim. DOB at 15. Defendants are incorrect. The "OSTAR Headlamp Pro" and the "OSLON Black Flat S" are very similar products, both accused of infringement. FAC at ¶ 31 ("Exemplary infringing instrumentalities include the OSTAR Headlamp Pro series and other substantially similar products"). While both products are accused, the FAC uses the "OSTAR Headlamp Pro" as an example of infringement and explains how the "OSTAR Headlamp Pro" <u>alone</u> meets all elements of claim 1 of the '524 patent. FAC at ¶¶ 31-35 (emphasis added). The allegations of infringement in ¶¶ 34-35 recite "OSTAR Headlamp Pro" and show how it meets <u>each and every</u> limitation of claim 1 using supporting images. The inclusion of pictures of other infringing products in addition to the allegations to the "OSTAR Headlamp Pro" does not otherwise undermine the sufficiency of this pleading. The SAC contains additional allegations directed to Defendants' concerns.[2]

2.       **Count 2 ('658 patent)**

In Count 2, Defendants point to Plaintiff's allegations of a "photocurable medium" which "sets upon exposure to light of a curing wavelength" and "sets in a time less than that required for a change in concentration of said phosphor in said phosphor layer over said LED of more than 0.5 percent." DOB at 19. Defendants' complain that this is insufficient notice pleading because it does not provide evidence that the LED is cured within the specified time period, but a recital of

---

[2] Plaintiff's proposed SAC provides additional diagrams, photos, and explanatory text concerning the OSTAR Headlamp Pro. It also removes exemplary pictures of related products and shows how this Accused Product meets all elements of claim 1, thereby eliminating any legitimate concern that Defendants may have about Count 1. SAC at ¶¶ 81-83.

evidence is not required for each and every limitation.  *Nalco,* 883 F.3d at 1350.  This particular limitation is directed to a non-public, secret manufacturing process.  Plaintiff plausibly alleges that the "photo-curable medium sets in a time less than that required for a change in concentration of said phosphor in said phosphor layer over said LED of more than 0.5 percent."  FAC at ¶ 55, 56.  That factual allegation must be taken as true.  The SAC contains additional allegations directed to Defendants' concerns.[3]

Defendants are well aware of the curing time in their own manufacturing process and have sufficient information to investigate Plaintiff's claims of infringement.  Where the information needed to eventually prove infringement is not publicly available, *i.e.*, it either rests solely in the hands of the accused infringer or is subject to an obligation of confidentiality, courts permit plaintiffs to allege facts "upon information and belief."  *See* Fed. R. Civ. P. 11(b)(3); *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-268 (3rd Cir. 2016).

This Court, for example, concluded that "given that [Defendant] would be the actual source of the requisite factual information… the proposed second complaint contain[ed] sufficiently detailed allegations (1) to plausibly give rise to a claim for inducement of patent infringement, and (2) to give [Defendant] fair notice of such claim." *Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*, No. 14-1268-SLR, 2016 WL 7230504 at *2 (D. Del. Dec. 14, 2016).  Similarly, this Court held that the allegation that "[o]n information and belief, [Defendant] has or will have knowledge . . . [of a non-public process that] would result in the sale and/or use of an infringing

---

[3] The SAC sets forth additional factual support that "photo (UV) curing is a dominant technique for encapsulant curing and provides significant benefits versus heat curing" and that "minimizing the change in concentration of the phosphor in a phosphor layer over an LED to less than 0.5 percent via expedient photo-curing is a dominant technique for encapsulant curing and provides significant benefits" based on citations to technical literature.  SAC at ¶¶ 112, 113.

article" was sufficient to withstand a motion to dismiss. *Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.*, No. 14-874-SLR, 2015 WL 4036951 at *7 (D. Del. Jul. 1, 2015).

Moreover, a "defendant cannot shield itself from a complaint . . . by operating in such secrecy that the filing of a complaint itself is impossible." *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013). This Court has specifically accepted pleading based "upon information and belief" for secret methods. *See DermaFocus LLC v. Ulthera, Inc.*, 201 F.Supp.3d 465, 473 (D. Del. 2016). Accordingly, Plaintiffs pleading on information and belief is sufficient. The SAC contains additional allegations directed to Defendants' concerns.[4]

### 3.      Count 3 ('428 patent)

Defendants challenge as insufficient Plaintiff's allegations regarding "irradiating said dispensed mixture… in a time period that is less than the time period in which said phosphor particles settle wherein said time period is less than 1 second." DOB at 17-18. Defendants complain that Plaintiff's pleading does not provide evidence of a secret step used to make the Accused Product. Defendants' secret manufacturing process is uniquely within Defendants' knowledge. Plaintiff's allegation that the element "irradiating said dispensed mixture in a time period that is less than the time period in which said phosphor particle settle wherein said time period is less than 1 second" is both plausible and must be taken as true. FAC at ¶ 76. The SAC contains additional allegations directed to Defendants' concerns.[5]

---

[4] The proposed SAC further clarifies this allegation and specifically identifies the basis for Plaintiff's allegations using industry literature. SAC at ¶¶ 112, 113.

[5] The proposed SAC identifies that it is based upon information and belief supported by industry literature indicating that "curing the phosphor mixture via irradiation to minimize the time period in which phosphor particles settle is a dominant technique and provides significant benefits." SAC at ¶ 143.

Defendants also feign confusion and complain that the pictures in the claim chart are of different products than that accused of infringement, so consequently, the chart does not provide "evidence…to demonstrate" infringement as to all elements of the claim.   DOB at 16-17. Defendants are incorrect.  The Accused Product is the "Duris S5" white LED.  The FAC clearly shows how this product meets all elements of claim 1 of the '428 patent.  FAC ¶¶ at 72-76. Defendants argue that Plaintiff's allegations use three different products because the FAC's diagrams evidencing infringement are of three different LEDs having three different lead frames. DOB at 17.  However, the source of the diagrams referenced in FAC ¶ 74 and ¶ 76 is a whitepaper provided on Defendants' website for the "Duris S5."  Defendants' whitepaper specifically states: "This application note provides information on the chemical compatibility of certain substances with LEDs, particularly with regard to some of their basic components.  In this context, the main mechanisms of chemical incompatibility are illustrated using examples of blue and white LEDs." Thus, Defendants' own materials establish that the "Duris S5" is a white LED, and the diagrams used in the FAC are applicable to the "Duris S5" Accused Product.  The SAC contains additional allegations directed to Defendants' concerns.[6]  Plaintiff has averred that all elements are present, which must be accepted as true on a motion to dismiss, and has satisfied the pleading requirements.

### 4.      Count 4 ('182 patent)

As above, Defendants argue that Plaintiff's allegations regarding "a molded encapsulation layer wherein said molded encapsulation layer is shaped to direct light emitted by said emitter [and] reduces a difference in beam divergence between a fast-axis and a slow-axis" are insufficient. DOB at 18.  They argue that the pictures contained in the claim chart are of different products than

---

[6] The proposed SAC specifically includes the allegation that the diagrams used in the FAC are applicable to the "Duris S5" white LED.  SAC at ¶ 141.

those accused of infringement, thus the chart does not provide "evidence…to demonstrate" infringement as to all elements of the claim.  DOB at 18 - 19.  Once again, Defendants are incorrect.  The Accused Product is the "LV W5AM".  The FAC clearly shows how this product meets all elements of claim 1 of the '182 patent.  FAC at ¶¶ 91-98.

Defendants also argue that the FAC annotates a diagram of a different product to show infringement.  DOB at 18.  The source of the diagram referenced in FAC ¶¶ 94-97 is a whitepaper provided on Defendants' website for the "LV W5AM" Accused Product.  Defendants' whitepaper specifically represents that this diagram is applicable to the Accused Product: "Valid for: all OSRAM Opto Semiconductors LEDS."  The SAC contains additional allegations directed to Defendants' concerns.[7]  Since Plaintiff has averred all elements are present, which must be accepted as true, it has met the pleading requirements.

## 5.    Count 8 ('287 patent)

Defendants assert Plaintiff's allegations relating to Count 8 are deficient because it has failed to provide "evidence" containing the word "diffract."  DOB at 19.  Again, evidence is not required at the pleading stage—only factual allegations.  *Nalco,* 883 F.3d at 1350.  Nonetheless, the FAC identifies optical components that result in a rectangular radiation pattern in the OSLUX LED regarding this claim element and cites extensive evidence, including multiple pictures.  FAC at ¶ 188 (and related graphic).  The complaint clearly pleads: "OSLUX LED comprises a <u>diffractive</u> optical element optically coupled to said light source" and the "OSLUX LED comprises and integrated lens that focuses the light to narrow the viewing angle prior to the light being

---

[7] The proposed SAC specifically includes the allegation that the diagrams used in the FAC are applicable to the "LV W5AM" LED.  SAC at ¶ 170.

diffracted by the diffractive optical element." FAC at ¶ 188-189 (emphasis added).  The SAC contains additional allegations directed to Defendants' concerns.[8]

### 6.    Count 10 ('644 patent)

Plaintiff provided very detailed factual allegations regarding infringement of Count 10. Nonetheless, Defendants imply that the "purported images" of the SFH 4356 in the FAC are insufficient, but stop short of claiming the images do not depict the accused product.  DOB at 20. Defendants argue that using an image of an accused product, including annotations to identify which parts are alleged to correspond to claim elements, is insufficient, but they provide no case law supporting their argument.  To the contrary, this Court has recognized that a complaint specifically identifying all accused products by name and with attached photos is sufficient. *Promos Techs.*, 2018 WL 5630585 at *4.

Defendants further argue that the FAC provides insufficient detail regarding "physically connecting the line of first leads to the line of second leads with a rail [in the specified manner]." DOB at 20.  As explained in the allegations, the physical structure depicted in the photos of the products establish these particular manufacturing elements.  FAC ¶228 - 236.  To the extent that they do not, the manufacturing processes of these products are secret and within Defendants' control, and Plaintiff's allegations are sufficient.  *K-Tech,* 714 F.3d 1277 at 1286.  The SAC contains additional allegations directed to Defendants' concerns.[9]

---

[8] The proposed SAC further clarifies this allegation and identifies additional optical lenses regarding this claim element.  SAC at ¶ 301 (and related graphic).

[9] The proposed SAC further clarifies this allegation and specifically identifies the basis for Plaintiff's allegation based upon information and belief.  SAC at ¶ 358 (and related graphic).

### 7.   Count 14 ('338 patent)

Defendants challenge Count 14 based on the "printed circuit board" element in a separate communication because the accused product is allegedly mounted on a ceramic substrate, not a "printed circuit board." DOB at 20. This argument fails, however, because it concerns claim construction of the term "printed circuit board"—not whether the FAC adequately alleges a "printed circuit board" in the accused product. Questions about proper claim construction are not relevant to the sufficiency of the pleadings. *Merck*, 2015 WL 4036951 at *7 (declining "to engage in a fact-finding analysis regarding the merits of [Plaintiff's] theory of liability at the pleadings stage.").

## IV.   INDIRECT INFRINGEMENT

To sufficiently plead induced infringement, "the patentee 'must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *M2M Sol'ns LLC v. Telit Comm's PLC*, No. 14-1103-RGA, 2015 WL 4640400, at *4 (D. Del. Aug. 5, 2015); *In re Bill of Lading*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). "To sufficiently plead the 'knowingly induced' element, the complaint must allege the defendant had knowledge of the patent and knew that the induced acts constituted patent infringement." *FO2GO LLC v. KeepItSafe, Inc.*, No. 18-807-RGA, 2019 WL 1615398, at *3 (D. Del. Apr. 16, 2019). "[D]irect evidence is not required; rather, circumstantial evidence may suffice." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). Indeed, the Supreme Court has held that "[e]vidence of 'active steps... taken to encourage direct infringement,' such as advertising an infringing use or instructing how to engage in an infringing use, shows an affirmative intent that the product be used to infringe." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005). The FAC meets this standard.

A.    **THE FAC SUFFICIENTLY ALLEGES INDIRECT INFRINGEMENT BY PLAUSIBLY ALLEGING KNOWLEDGE, SPECIFIC INTENT, AND DIRECT INFRINGEMENT FOR EACH COUNT**

Defendants argue that Plaintiff's induced infringement claims should be dismissed because the FAC "does not include facts alleging that Defendants had knowledge that its customers would infringe, committed specific acts to induce others to infringe, [and] had the specific intent to induce infringement." DOB at 4.   Defendants are wrong.   The FAC adequately alleges both that Defendants knowingly induced infringement and their specific intent to encourage their customers to infringe.

Defendants assert that "Plaintiff's induced infringement allegations consists solely of two paragraphs" and that "provid[ing] unspecified guides and support materials" do not support a claim of induced infringement.  DOB at 5.  This is not a numbers game; general allegations are sufficient to support a claim of induced infringement.  *M2M,* 2015 WL 4640400, at *4.  Moreover, the FAC contains far more than just "two paragraphs."  Plaintiff describes at least 14 products (or products made by infringing processes) that, when used by Defendants' customers in the United States, constitute a direct infringement of each of the 14 patents.  FAC at ¶¶ 31-35, 50-56, 72-76, 91-98, 114-120, 140-147, 161-167, 184-189, 206-212, 227-236, 251-257, 273-281, 302-311, 329-336. Plaintiff further alleges that these products have no substantial non-infringing uses.  FAC at ¶¶ 43, 62, 82, 104, 128, 153, 175, 197, 217, 242, 265, 289, 316, 341.   The numerous paragraphs explaining how these products infringe detail specific acts of inducement of infringement by Defendants and direct infringement by their U.S. customers.  For each of the 14 asserted patents, Plaintiff further alleges that Defendants provide data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, application notes, and other forms of support that induce their customers and/or end users to directly infringe Plaintiff's patents, and that users will necessarily infringe when using these products in their intended way as described

11

in Defendants' documentation.  FAC at ¶¶ 43, 62, 82, 104, 128, 153, 175, 197, 217, 242, 265, 289, 316, 341.  Plaintiff provides examples of these documents, including citing six whitepapers, manuals, and marketing materials of Defendants, showing infringement by Defendants' products.  As these materials show the infringement of the underlying products, Defendants' provision of the same to their customers constitutes knowledge of their customers' direct infringement.  Similarly, Defendants' provision of these materials demonstrates their specific intent to infringe.  The SAC contains additional allegations directed to Defendants' concerns.[10]

The FAC also establishes Defendants' knowledge of the patents.  Paragraphs 37-38 allege that Defendants "had actual knowledge of the [patents] gained in its own prosecution activities" by citing six asserted patents, and ¶ 38 alleges that Defendants were served with complaints alleging infringement of related patents as early as July of 2017.  *See also* FAC at ¶¶ 36-39, 57-58, 77-78, 99-100, 121-124, 148-149, 168-171, 190-193, 213, 237-238, 258-261, 282-285, 312, and 337.

The FAC further alleges that despite knowledge of Plaintiff's patents, Defendants continued to encourage their customers' infringing use of the Accused Products.  The FAC alleges that users of the accused product <u>will necessarily infringe when using the products in their intended way</u> and "<u>Defendants know and intend that customers that purchase the [asserted patent's] Accused Products will use those products for their intended purpose</u>."  FAC at ¶¶ 43, 62, 82, 104, 128, 153, 175, 197, 217, 242, 265, 289, 316, 341 (emphasis added).  These pleadings clearly establish allegations of Defendants' knowledge of their customers' inevitable infringement.

---

[10] The proposed SAC further identifies these materials and the origin of Defendants' specific data sheets.  SAC at ¶¶ 77, 105, 136, 165, 198, 234, 295, 326, 352, 384, 415, 454, and 486.

Defendants' knowledge that use of the Accused Products constitutes infringement and their continued encouragement of such use is also sufficient to infer that Defendants had specific intent to induce infringement. *Crypto Research, LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 687 (E.D.N.Y. 2017); *M2M*, 2015 WL 4640400, at *4 ("general allegations of Defendants publishing manuals and promotional literature [is] sufficient to plead Defendants' specific intent.").

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F. Supp. 2d 772 (D. Del. 2013) is instructive. In *Fairchild*, this Court concluded that the patentee had met its burden to sufficiently allege that the indirect infringer had knowledge that the induced acts constituted patent infringement, where the patentee pled:

> **For example**, [the alleged indirect infringer] **is aware that the infringing soft start circuit is a default feature of the controller products** incorporating this circuit, that the standard circuit is always present and cannot be disabled by a purchaser of the controller **and, therefore, that** [the indirect infringer's] **customers will infringe the** [patent-in-suit] **by using the default standard feature** or by incorporating the infringing controller in other products, and that subsequent sales of such products would also be a direct infringement.

*Id.* at 778 (emphasis in original). Here, like *Fairchild*, the FAC alleges that Defendants' customers will necessarily infringe when using the respective accused products. In *Fairchild*, infringement followed because the default feature was always present and could not be disabled; in the FAC, use of the respective accused products necessarily infringes because the product itself infringes when used and/or sold by Defendants' customers.[11]

---

[11] Defendants' citation to *Vita-Mix* is inapposite, as it concerns an accused product that could be used in a non-infringing way. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) ("Vita–Mix establishes that Basic knew of the patent, and argues that Basic knew of its products' *potentially infringing use*, but goes no further."). Because *Vita-Mix's* accused product had substantial non-infringing uses, intent could not be inferred. *Id.* Defendants' accused products, however, are alleged to necessarily infringe, and thus there is no question of Defendants' intent here. FAC at ¶¶ 43, 62, 82, 104, 128, 153, 175, 197, 217, 242, 265, 289, 316, 341. Defendants remaining supporting citations are inapposite for the same reason.

## V.   WILLFUL INFRINGEMENT

Defendants' challenge of Plaintiff's willful infringement allegations also improperly focuses on the sufficiency of the proof, rather than the adequacy of the notice they provide.

### A.   PRE-SUIT KNOWLEDGE BASED ON PATENT PROSECUTION AND PRIOR LITIGATION

The FAC adequately pleads in Counts 1, 5, 7, 8, 11 and 12 that Defendants had knowledge of the patents-in-suit during the prosecution of their own patent portfolio and continued to engage in infringing activity although Defendants knew (or should have known) that such activities infringed.   FAC at ¶¶ 37-38, 122-123, 169-170, 191-192, 259-260, 283-284.   Defendants' argument that foreign "prosecution activities" are insufficient to support knowledge for willfulness is contrary to this Court's precedent.  *KOM Software Inc. v. NetApp, Inc.*, No. 1:18-CV-00160-RGA, 2018 WL 6167978, at *3 (D. Del. Nov. 26, 2018).   In *KOM Software*, this court held that knowledge of the patents-in-suit could be acquired during prosecution activities:

> Plaintiff alleges that NetApp obtained knowledge of the patents-in-suit during the prosecution of NetApp patents and has continued infringement despite that knowledge.   NetApp argues that this allegation is untrue and therefore insufficient.   However, NetApp's factual argument is an inappropriate basis for granting a motion to dismiss.   Thus, as I assume Plaintiff's allegation of NetApp's knowledge to be true, it has pled a sufficient willfulness claim.

*Id.* at *3.   The SAC contains additional allegations directed to Defendants' concerns.[12]

Defendants' argument that *related litigation*, *i.e.* litigation of a sister patent portfolio from the same original assignor asserted against Defendants' business enterprise (including substantially the same Defendants), cannot support the requisite knowledge for willfulness is also improper.   Plaintiff's allegations establish that Defendants would/should have investigated the

---

[12] The proposed SAC pleads that all Defendants are run and controlled by the same Managing Board "CODM" and, therefore, each Defendant has knowledge of the acts of the others.   SAC at ¶¶ 23-25.

entire patent portfolio of the original assignor during this prior litigation—not just half of it.

Defendants' challenge here goes to the weight of the evidence—a determination properly made in

a motion for summary judgment, not in a motion to dismiss.  *Twombly*, 550 U.S. at 555-56

("[W]here a complaint <u>permits an inference</u> that the defendant was on notice of the potential

infringement and still continued its infringement, the plaintiff has pled a plausible claim of willful

infringement.") (emphasis added); *Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, No. 17-313-MSG,

2018 WL 834583, at *13 (D. Del. Feb. 12, 2018).[13]

### B.    POST-SUIT KNOWLEDGE BASED ON PLAINTIFF'S PRIOR COMPLAINT

Ignoring this Court's precedent, Defendants challenge Plaintiff's allegations of knowledge

based on the original complaint.  DOB at 11 - 12; *DermaFocus*, 201 F.Supp.3d at 473 (noting that

post-*Halo*, "mere notice of the charge of infringement gleaned from service of the complaint" is

sufficient for willful infringement claims to withstand a motion to dismiss); *BlackBerry Ltd. v.*

*Nokia Corp.*, No. 17-00155-RGA, 2018 WL 1401330 (D. Del. May 20, 2018) (amended complaint

held sufficient to place Defendant on notice to support willful infringement at the motion to dismiss

stage).

Defendants' case law is distinguishable.  In both *Groove Digital* and *Valinge*, this Court

held that Defendants did not have the requisite knowledge <u>as of the date the willful infringement</u>

<u>claim was filed</u>.  *Groove Digital, Inc. v. King.com, Ltd.*, No. 18-00836-RGA, 2018 WL 6168615,

at *3 (D. Del. Nov. 26, 2018) ("[T]o state a claim of willful infringement, the patentee must allege

facts in its pleading plausibly demonstrating that the accused infringer had committed subjective

---

[13] Defendants' reliance on *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F.Supp.2d 225, 234 (D. Del. 2012) is misplaced, as Plaintiff does not claim that Defendants' knowledge is derived from "the same market, media publicity, and *unrelated litigation*," but from *related litigation* of patents from the same assignor and subject matter.

willful infringement as of the date of the filing of the willful infringement claim."); *see also*

*Valinge Innovation AB v. Halstead New England Corp.*, No. 16-1082-LPS, 2018 WL 2411218, at

*10-12 (D. Del. May 29, 2018).   Here, Defendants' knowledge of the asserted patents and

infringement allegations are based on the original complaint, filed November 2, 2018, and thus

predate the operative claim for willful infringement made in Plaintiff's FAC, filed May 10, 2019.

FAC at ¶¶ 41, 60, 80, 102, 126, 151, 173, 195, 215, 240, 263, 287, 314, 339 (citing knowledge as

of the original complaint).   The original complaint provided great detail of the asserted claims and

the alleged infringement on an element-by-element basis.   D.I. 1 at ¶¶ 30-34, 48-54, 69-73, 87-95,

110-117, 136-143, 156-162, 178-183, 199-205, 220-229, 243-249, 264-272, 292-301, 319-326.

Thus, Plaintiff's allegations go well beyond simply alleging that "Defendants have actual

knowledge of the [asserted] Patent at least as of service of this Complaint."   DOB at 11.

Defendants' citation to *Callwave Comm's LLC v. AT&T Mobility LLC*, No. 12-01701-

RGA, 2014 WL 5363741 (D. Del. Jan. 28, 2014) is also inapposite, as it was implicitly overruled

by the Federal Circuit decision in *Mentor Graphics Corp. v. EVE–USA, Inc.*, 851 F.3d 1275 (Fed.

Cir. 2017). *Id.* (holding that an original complaint can support willfulness allegations in an

amended complaint).   *Mentor Graphics* was examined by this Court in detail in *Valinge*, and the

approach was adopted in *Groove Digital*.  *See Valinge,* 2018 WL 2411218*,* at *10-11 and *Groove*

*Digital*, 2018 WL 6168615, at *2.   The FAC therefore properly pleads post-suit willfulness after

the filing of the original complaint (Nov. 2, 2018).

## VI.   ENTITY SPECIFIC ALLEGATIONS

### A.   LEGAL STANDARD

Pleadings should generally indicate both the entity accused of infringement and the alleged

act.  *M2M*, 2015 WL 4640400, at *6-7.   In *M2M*, this Court dismissed allegations of direct and

indirect infringement because both the parent and subsidiary were jointly called "Telit" and it was unclear whether the allegations were directed to the parent, the subsidiary, or to both.  *Id.*

However, infringement can be plead jointly against related entities when a plaintiff cannot reasonably be expected to separate defendants' conduct.  *Acantha LLC v. Depuy Synthes Sales, Inc.*, No. 15-1257, 2016 WL 8201781, at *2 (E.D. Wis. July 28, 2016) ("Plaintiff need not extensively elaborate on the details of each individual defendant to comply with Rule 8."). Because Rule 8 does not require a heightened pleading standard for patent infringement actions, when the "activity of the multiple defendants is so intertwined that no one from the outside could possibly separate the different subsidiaries' alleged infringing conduct," allegations against the collective group of all "Defendants" is appropriate.  *Id.*  Thus, "a complaint that collectively refers to 'defendants' meets Rule 8's pleading standard if 'it can be reasonably inferred that each and every allegation is made against each individual defendant.'" *Groove Digital*, 2018 WL 6168615, at *3.

## B. THE FAC IDENTIFIES EACH OSRAM DEFENDANT'S ROLE IN THE ALLEGED INFRINGEMENT

Defendants also argue that Plaintiff's claims fail for neglecting to specify which of the 8 Defendants induced the infringement.  DOB at 2, 8, 11.  Defendants are incorrect.  Plaintiff has pled upon information and belief the role that each separate entity played in the alleged infringement.  FAC at ¶¶ 5-12. Such specific entity-level pleading is precisely the type of factual allegations that this Court, in *Groove Digital*, upheld as sufficient under Rule 8.  *Groove Digital,* 2018 WL 6168615, at *3 (holding allegations using "King" to allege conduct against three related entities proper because "Plaintiff specifically identifies Defendant King.com, Ltd. as committing certain allegedly infringing acts… goes on to allege specific acts of Defendants King.com, Inc.

and King.com (U.S.), LLC… [and the] <u>factual allegations are sufficient to support an inference that all three King Defendants engaged in the alleged infringing conduct</u>.") (emphasis added).

Defendants' reliance on *M2M* and *Chalumeau* is misplaced.  Unlike the pleadings in *M2M* where it was unclear which Telit entity was accused of any given act of infringement, the FAC makes absolutely clear that <u>all *D*</u>efendants are accused of <u>all</u> of the infringing acts—akin to *Groove Digital* rather than *M2M*.  The FAC specifically accuses each individual defendant of selling the Accused Products or having a sales office in the U.S.  FAC at ¶¶ 5-12.  Plaintiff further accuses each Defendant of <u>all</u> counts of infringement.  *See, e.g.,* FAC at ¶ 13 ("Defendant entities are related entities under the OSRAM brand and infringe the Asserted Patents by substantially <u>the same products in the same way</u>.") (emphasis added).  Similarly, in *Chalumeau*, this Court noted that "[t]he connection between the moving defendants and the patent applications from nearly a decade ago are not explained sufficiently to make plausible that either of the defendants had actual knowledge."  *Chalumeau Power Sys. LLC v. Alcatel–Lucent*, C.A. No. 11-1175-RGA, 2012 WL 6968938, at *1 (D. Del. July 18, 2012).  The FAC however specifically makes allegations against all Defendants jointly: "Defendants and/or closely-related affiliates have further had actual knowledge of the [asserted] Patent family, gained in its own prosecution activities."  FAC at ¶¶ 37, 122, 169, 191, 259, 283.  The FAC thereby alleges the requisite knowledge of all Defendants operating jointly as under the rule of *Acantha*.  *Acantha*, 2016 WL 8201781, at *2.  Without this rule, any defendant could avoid "knowledge" by delegating patent prosecution activities to a subsidiary.  The SAC contains additional allegations directed to Defendants' concerns.[14]

---

[14] The proposed SAC pleads that all Defendants are run and controlled by the same Managing Board "CODM" and, therefore, each defendant has knowledge of the acts of the others.  SAC at ¶¶ 23-25.

The FAC satisfies Rule 8 as "it can be reasonably inferred that each and every allegation is made against each individual defendant." *Groove Digital,* 2018 WL 6168615, at *3. The FAC also sufficiently provides all Defendants notice of the nature of the relevant claim and conduct. *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, No. 14-2147, 2015 WL 5118509, at *10 (N.D. Cal. Aug. 31, 2015); *see also Nestle Purina PetCare Co. v. Blue Buffalo Co. Ltd.*, No. 14-859, 2015 WL 1782661, at *9 (E.D. Mo. Apr. 20, 2015) (grouping defendants was proper where identical claims were brought against each); *Hudak v. Berkley Grp., Inc.*, No. 13-89, 2014 WL 35466, at *4 (D. Conn. Jan. 23, 2014) ("Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each.").

The proposed SAC pleads additional facts that further support the liability of each defendant, individually and jointly, for all acts of infringement.[15] The proposed SAC further alleges facts that demonstrate that the OSRAM entities are inextricably intertwined and that support piercing the corporate veil based on both agency and alter ego theories.[16] Defendants conduct business under a common name, are managed centrally by OSRAM Licht AG, submit combined financial and management reports, share high-level officers, and present themselves as a unified single business entity.[17] Having held itself to the public as such, it would be unjust to permit OSRAM to assert a separate corporate structure to evade liability.

Infringement by related entities can be plead jointly under either a parent-subsidiary agency relationship, or a 'joint business enterprise' theory. For the former, "to state a claim based on an alleged parent-subsidiary relationship, a plaintiff would have to allege (1) the existence of a parent-subsidiary relationship, and (2) facts that justify piercing the corporate veil." *M2M*, 2015 WL

---

[15] SAC at ¶¶ 5, 75, 103, 134, 163, 196, 231, 261, 293, 324, 343, 350, 382, 413, 452, and 484.
[16] SAC at ¶¶ 17-57.
[17] SAC at ¶¶ 54.

4640400, at *3.  The second condition may be satisfied by the "existence of an agency relationship between the entities where the parent effectively controls the conduct of the subsidiary."  *Id;* *StrikeForce Technologies, Inc. v. PhoneFactor, Inc. and First Midwest Bancorp, Inc*., No. 13–490–RGA–MPT, 2013 WL 6002850, at *4 (D. Del. Nov. 13, 2013).   The proposed SAC establishes joint pleading under the agency veil piercing theory because each of the OSRAM defendants are subsidiaries of OSRAM Licht AG, and they are subject to the central management and control of the "CODM" of OSRAM Licht AG in all of their "operating activities" including specifically the infringing activities.[18]  The proposed SAC not only alleges sufficient facts to show OSRAM Licht AG's direction and control over its subsidiaries, but also that OSRAM Licht AG's direction and control is directly related to the alleged infringement of the accused LED products.

## VII.   CONCLUSION

For the reasons stated above, Defendants' Motion should be denied in its entirety.

Dated:  June 28, 2019

Respectfully Submitted,

  */s/ Eric J. Evain*
Eric J. Evain (# 3729)

William M. Parrish
*Pro Hac Vice Forthcoming*
Henning Schmidt
*Pro Hac Vice Forthcoming*
Victor G. Hardy
*Pro Hac Vice Forthcoming*
HARDY PARRISH YANG, LLP
Spicewood Business Center
4412 Spicewood Springs Rd., Suite 202
Austin, Texas 78759
BParrish@hpylegal.com
HSchmidt@hpylegal.com
VHardy@hpylegal.com

Edward M. Lilly (# 3967)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801
Tel:  302-622-7000
Fax:  302-622-7100
eevain@gelaw.com
elilly@gelaw.com

*Attorneys for Plaintiff*
*Bench Walk Lighting LLC*

---

[18] SAC at ¶¶ 23-24, 57.