IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BENCH WALK LIGHTING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1732-RGA |
| | ) | |
| OSRAM SYLVANIA, INC., OSRAM | ) | |
| LICHT AG, OSRAM GMBH, OSRAM | ) | |
| OPTO SEMICONDUCTORS GMBH & CO., | ) | |
| OSRAM OPTO SEMICONDUCTORS, | ) | |
| INC., LEDVANCE GMBH, LEDVANCE | ) | |
| LLC, and LEDENGIN, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS OSRAM SYLVANIA, INC., OSRAM OPTO SEMICONDUCTORS, INC. LEDVANCE LLC'S AND LEDENGIN, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
nhoeschen@shawkeller.com
*Attorneys for Defendants*

OF COUNSEL:
Srikanth K. Reddy
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1209

Neel Chatterjee
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA 94063
(650) 752-3100

Dated: July 17, 2019

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.    SUMMARY OF ARGUMENT .................................................................................... 1

III.   LEGAL STANDARDS ............................................................................................... 3

IV.   BWL'S PROPOSED AMENDMENTS TO ITS FAC ARE FUTILE ......................... 3

       A.      BWL'S Proposed Amendments to its Indirect Infringement Allegations Fail to State a Claim For Which Relief Can be Granted ......................................... 3

       B.      BWL'S Proposed Amendments to Its Willful Infringement Allegations Fail to Address the Deficiencies in the FAC ................................................................. 7

       C.      BWL'S Proposed Amendments to its Direct Infringement Allegations as to Counts 1, 2, 3, 4, 8, 10, and 14 Do Not Satisfy the Requirements of Rule 8 ..... 8

             1.   BWL's Direct Infringement Allegations as to Counts 1, 2, 3, 4, 8, 10, and 14 Fail to Address the Deficiencies in the FAC ......................................................... 8

             2.   BWL's Motion for Leave to Amend Should be Denied to the Extent it Seeks to Assert Infringement Over Products Previously Voluntarily Dismissed From the Case ........................................................................................................................ 11

       D.      BWL'S Proposed New Allegations Regarding the Named Defendant Entities Do Not Sufficiently Plead a Theory for Joint Liability .................................... 14

V.     CONCLUSION ......................................................................................................... 18

**Page(s)**

**Cases**

*Addamax Corp. v. Open Software Found., Inc.*,
    149 F.R.D. 3 (D. Mass. 1993) ................................................................................................ 13

*AgroFresh Inc. v. Essentiv LLC*,
    No. CV 16-662 (MN), 2019 WL 350620 (D. Del. Jan. 29, 2019) ........................................... 4

*Akamai Tech., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) ............................................................................................. 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 2, 3, 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................................... 2, 8

*Blue Spike, LLC v. Texas Instruments, Inc.*,
    No. 6:12-CV-499, No. 6:12-cv-576, 2014 WL 11829328 (E.D. Tex. Dec. 22,
    2014) ...................................................................................................................................... 13

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) .................................................................................................. 3

*C.R. Bard, Inc. v. Guidant Corp.*,
    997 F. Supp. 556 (D. Del. 1998) ........................................................................................... 17

*Implicit, LLC v. NetScout Sys., Inc.*,
    No. 2:18-cv-00053-JRG (E.D. Tex. Jan. 8, 2019) ................................................................ 15

*Kundratic v. Thomas*,
    407 F. App'x 625 (3d Cir. 2011) ........................................................................................... 11

*M2M Sols. LLC v. Telit Commc'ns PLC*,
    No. 14-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015) ............................................. 2

*Massarsky v. Gen. Motors Corp.*,
    706 F.2d 111 (3d Cir. 1983) .................................................................................................... 3

*Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*,
    No. 17-269-RGA, D.I. No. 75 (Oral Order) (D. Del. Mar. 9, 2018) ...................................... 14

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017) ............................9, 10, 11

*Pearson v. Component Tech. Corp.*,
247 F.3d 471 (3d Cir. 2001)........................................................................................17, 18

*Pragmatus AV, LLC v. Yahoo! Inc.*,
No. 11-902-LPS, 2012 WL 6044793 (D. Del. Nov. 13, 2012)..................................................5

*Pragmatus Telecom, LLC v. Ford Motor Co.*,
No. 12-92-RGA, 2012 WL 2700495 (D. Del. July 5, 2012) ...................................................4

*Promos Techs., Inc. v. Samsung Elecs. Co. Ltd.*,
No. 18-307-RGA, 2018 WL 5630585 (D. Del. Oct. 31, 2018) .............................................16

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
No. 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016) ...................................................2

*Reiffin v. Microsoft Corp.*,
270 F. Supp. 2d 1132 (N.D. Cal. 2003) ..................................................................................13

*SIPCO, LLC v. Streetline, Inc.*,
230 F. Supp. 3d 351 (D. Del. 2017)..........................................................................................2

*StrikeForce Techs., Inc. v. PhoneFactor, Inc.*,
No. 13-490-RGA-MPT, 2013 WL 6002850 (D. Del. Nov. 13, 2013)..............................14, 15

*Trans Video Elecs., Ltd. v. Netflix, Inc.*,
No. 12-1743, 2014 WL 900929 (D. Del. Mar. 4, 2014) .........................................................6

*Wi-Lan Inc. v. Sharp Elecs. Corp.*,
No. 15-379-LPS, D.I. 186, Memorandum Order (D. Del. Sep. 22, 2017) ............................13

*Ziemba v. Incipio Techs. Inc.*,
No. 13-5590 (JLL), 2014 WL 4637006 (D.N.J. Sept. 16, 2014)..............................................7

**Statues**

Fed. R.Civ. P. Rule 8 ...........................................................................................................2, 8, 11

Fed. R.Civ. P. 12(b)(6)..............................................................................................................3, 16

Fed. R.Civ. P. 41 ...........................................................................................................................13

# I.     NATURE AND STAGE OF PROCEEDINGS

Plaintiff Bench Walk Lighting's ("BWL" or "Plaintiff") sued Defendants on November 2, 2018, alleging that over 250 products infringe 14 asserted patents. (*See generally* D.I. 1) BWL filed a first amended complaint ("FAC") asserting infringement as to only 14 accused products, one for each asserted patent, on May 10, 2019. (*See generally* D.I. 13) On May 24, 2019, OSRAM Sylvania, Inc. ("OSI"); OSRAM Opto Semiconductors, Inc. ("OOSI"); and LEDVANCE LLC, the only defendants who had been served,[1] timely moved to partially dismiss the FAC (D.I. 14, 15) and answered the allegations in the FAC not subject to their motion to dismiss. (D.I. 16) BWL opposed the partial motion to dismiss the FAC (D.I. 23) and later moved for leave to file a second amended complaint ("SAC"), (D.I. 24, 25). On stipulation by the parties, the Court extended the deadline for OSI, OOSI, and LEDVANCE LLC to reply to their motion to dismiss the FAC to coincide with their opposition to BWL's motion for leave to amend the FAC. (*See* July 10, 2019 Order)

# II.    SUMMARY OF ARGUMENT

BWL's motion for leave to amend should be denied because the proposed SAC does not cure many of the deficiencies set forth in Defendants motion to dismiss the FAC on its indirect and willful infringement allegations on all counts and 7 of its 14 claims for direct infringement. (*See generally* D.I. 15) As such, BWL's proposed amendment would be futile.

This is BWL's third complaint and second unsuccessful attempt to fix its deficient allegations. BWL's new proposed allegations fail to properly plead induced infringement. BWL argues the SAC identifies "additional factual support to the already detailed [First Amended Complaint] FAC allegations." These allegations, however, neither evidence that Defendants

---

[1] Defendant LedEngin, Inc. answered the FAC after being served (D.I. 21).

committed acts to encourage infringement nor possessed the specific intent to encourage any infringement. The proposed SAC also fails to specify which of the eight defendants are said to have induced others to infringe the asserted patents. *See M2M Sols. LLC v. Telit Commc'ns PLC*, No. 14-1103-RGA, 2015 WL 4640400, at *4 (D. Del. Aug. 5, 2015) ("fusing the two Defendants as one is also problematic for Plaintiff's indirect infringement claims").

BWL also fails to show that any Defendant had pre-suit knowledge of the asserted patents to support a willful infringement claim. BWL alleges only that Defendants knew about "a sister portfolio of the asserted patent portfolio" because some Defendants previously defended an infringement suit filed by the owner of the "sister portfolio." These facts are insufficient to state a claim for willful infringement.

Finally, BWL's direct infringement allegations as to Counts 1, 2, 3, 4, 8, 10, and 14 lack factual support to pass muster under Rule 8. The proposed SAC must contain enough "[f]actual allegations . . . to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, BWL's allegations on many counts are merely speculative. A plaintiff cannot maintain claims lacking factual support. It is not sufficient to merely parrot the claim language and allege that the accused product satisfies the limitations. If that were the case, then *Twombly* and *Iqbal* would have no meaning. Indeed, this Court has consistently rejected allegations similar to those made by BWL as too speculative to adequately state a claim. *See, e.g., SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp. 3d 351, 353-54 (D. Del. 2017); *Raindance Techs., Inc. v. 10x Genomics, Inc.*, No. 15-152-RGA, 2016 WL 927143, at *1-*3 (D. Del. Mar. 4, 2016).

Instead of conducting proper pre-suit investigation and sufficiently pleading direct infringement on Counts 1, 2, 3, 4, 8, 10, and 14, BWL merely identifies an accused product by

name, mimics the claim language, and arbitrarily annotates images of a supposed exemplary product to show alleged infringement of a representative asserted claim. But these are just "bare assertions" and "amount to nothing more than a 'formulaic recitation of the elements' of a [patent infringement] claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (internal citation omitted). Moreover, BWL should not be permitted to amend its complaint to accuse products of infringing the asserted patents that it previously consciously dropped from the case in the FAC.

Because neither BWL's FAC nor its proposed SAC rectify the deficiencies Defendants identified in their motion to dismiss, BWL's motion for leave to file a SAC should be denied on futility grounds.

## III.    LEGAL STANDARDS

Courts may properly deny leave to amend a complaint where the proposed amendments would be futile. "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). In other words, courts "may properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983).

## IV.    BWL'S PROPOSED AMENDMENTS TO ITS FAC ARE FUTILE

### A.    BWL's Proposed Amendments to its Indirect Infringement Allegations Fail to State a Claim For Which Relief Can be Granted

BWL's proposed amendments to its indirect infringement allegations fail to include factual support for its legal claims, and should therefore be rejected as futile. As described in Defendants' partial motion to dismiss (D.I. 15 at 5-8), BWL's FAC merely recites the elements of an induced infringement claim, but lacks facts to support a plausible inference that any of those elements are actually met in this case. BWL's proposed amendments to its FAC do not

cure this fundamental deficiency.

BWL's newly proposed indirect infringement allegations fail to state a claim on which relief can be granted. First, BWL seeks to newly allege that Defendants are liable for contributory infringement. But in its proposed SAC, BWL does nothing more than recite the basic legal elements that must be met for a contributory infringement claim, and does not plead facts to meet them. BWL alleges that:

> Defendants have knowingly contributed to direct infringement by its customers by having imported, sold, and/or offered for sale, and knowingly importing, selling, and/or offering to sell within the United States the accused products which are not suitable for substantial non-infringing use and which are especially made or especially adapted for use by its customers in a manner that infringes the [Asserted] Patent.

(D.I. 25-1 ¶¶ 95, 123, 153, 185, 218, 252, 283, 314, 339, 372, 404, 438, 470, 501)

BWL repeats verbatim this allegation in the SAC across the fourteen asserted patents (except to change the number of the Asserted Patent), and does not even attempt to particularize the pleading to include facts as to how any specific patent is contributorily infringed. There are no facts as to how any third party has directly infringed the asserted patent, why it would be plausible to allege that any Defendant knew of the asserted patent or how it was being infringed, or any evidence that the accused products have no substantial non-infringing uses. In short, BWL's proposed amendment "'says nothing more than' Defendants sell something that infringes and has no noninfringing uses." *AgroFresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN), 2019 WL 350620, at *5 (D. Del. Jan. 29, 2019). That is not enough to state a claim for which relief can be granted. *See id.* (citing cases); *see also Pragmatus Telecom, LLC v. Ford Motor Co.*, No. 12-92-RGA, 2012 WL 2700495, at *1 (D. Del. July 5, 2012). BWL's proposed allegation as to contributory infringement should therefore be rejected as futile.

Second, BWL proposes to revise a paragraph previously directed to induced infringement to ostensibly generalize it to "indirect infringement." Specifically, BWL proposes to change "Defendants' *inducement* includes…" to "Defendants' *indirect infringement* includes…." (*See* D.I. 25-1 ¶¶ 96, 124, 154, 186, 219, 253, 284, 315, 340, 373, 405, 439, 471, 502 (emphasis added)) However, the rest of that sentence is still directed to *induced* infringement, as it goes on to list examples of providing various "forms of support that *induce* … customers and/or end users to directly infringe the [Asserted] Patent." (*See, e.g.*, *id.* ¶ 96 (emphasis added)) To the extent BWL's proposed change from "inducement" to "indirect infringement" in this paragraph is meant to apply the allegation generally to different forms of indirect infringement, it should be rejected as futile for failing to notify Defendants as to whether it is directed to induced infringement only or to contributory infringement as well. *Cf. Pragmatus AV, LLC v. Yahoo! Inc.,* No. 11-902-LPS, 2012 WL 6044793, at *13 & n.5 (D. Del. Nov. 13, 2012), *report and recommendation adopted*, 2013 WL 2295344 (D. Del. May 24, 2013) (noting that use of the phrase "inducing…and/or contributing to the infringement by others" is disfavored as it "does not give a defendant (or the Court) a clear indication as to whether a plaintiff intends to plead induced infringement, contributory infringement or both").

Third, BWL proposes to add two sentences (repeated across its fourteen counts), as follows: "Defendants' indirect infringement additionally includes marketing its products for import by its customers into the United States. Defendants' indirect infringement further includes providing application notes instructing their customers on infringing uses of the accused products." (*See* D.I. 25-1 ¶¶ 96, 124, 154, 186, 219, 253, 284, 315, 340, 373, 405, 439, 471, 502) Those amendments fail to specify whether or how they are intended to support an induced infringement claim, a contributory infringement claim, or both. However, for purposes of this

motion Defendants assume they are meant to relate to a claim for inducement, as they immediately follow a sentence stating that Defendants "induce their customers and/or end users to directly infringe" the asserted patent. Even under that assumption, BWL's proposed additions fail. The proposed amendments fail to provide any facts as to how the asserted patents are directly infringed (or by whom), why it would be plausible that such direct infringement was caused by specific acts by any Defendant (or what those specific acts are), or why it would be plausible to allege that any Defendant specifically intended to induce the (unidentified) direct infringement. *See Trans Video Elecs., Ltd. v. Netflix, Inc*., No. 12-1743-LPS, 2014 WL 900929, at *4 (D. Del. Mar. 4, 2014), *report and recommendation adopted*, 2014 WL 1268680 (D. Del. Mar. 26, 2014) (recommending dismissal of Complaint that included only a "bare reference to 'instructions . . . on how to use the accused product in such a way that infringes,'" the contents of which was not described). BWL's brief emphasizes how misguided its proposed amendments are: BWL argues that it has provided sufficient factual support for its *indirect* infringement claims because it pleads that Defendants have "disseminated" "supporting documents…showing infringement *by Defendants' products*." (D.I. 25 at 3 (emphasis added)) But even if assumed true for purposes of this motion, that allegation fails to show how any *third party* has directly infringed the asserted patents as a result of Defendants' actions.

Finally, BWL argues that the proposed SAC cures the deficiencies in its FAC because it "further identifies Defendants' own materials and the origin of Defendants' own data sheets to provide additional factual support…." (*Id.*) However, each of the new paragraphs to which BWL cites for support of this claim (*id.*) recites only that a Defendant is "listed on the data sheet" for an accused product. (*See, e.g.*, D.I. 25-1 ¶ 77 ("On information and belief, OSRAM Opto Semiconductors is listed on the data sheet for Defendants' OStar Headlamp Pro. *See*

https://dammedia.osram.info/media/resource/hires/osram-dam-6720286/LE%20UW%20U1A4%2001_EN.pdf.")) Those allegations not only fail to include facts describing the substance of what Defendants are alleged to have done to induce or contribute to direct infringement by a third party, they are also futile for the separate reason that they appear in the "direct infringement" sections of the SAC. Defendants should not be expected to piece together allegations across different theories of infringement to try to understand BWL's claims. *See Ziemba v. Incipio Techs. Inc.*, No. 13-5590 (JLL), 2014 WL 4637006, at *4 (D.N.J. Sept. 16, 2014) (finding that plaintiff's inclusion of "three separate claims of infringement … each containing its own elements" within a single count "violate[d] the pleading standard").

### B. BWL's Proposed Amendments to Its Willful Infringement Allegations Fail to Address the Deficiencies in the FAC

The alleged new facts BWL seeks to include in the SAC do not state a claim for willful infringement. BWL proposes to add four paragraphs to its willful infringement claims in the SAC. Those paragraphs, which BWL proposes to add without variation across all eleven counts that plead pre-suit knowledge (Counts 1-8, 10-12), read as follows:

> 88. The patents asserted against Defendants in the DSS Case cover LED technology and originally assigned to Avago. These were sold to Document Security Systems, Inc. through the secondary patent market as part of a portfolio of Avago's LED-related patents.

> 89. Upon information and belief, diligence conducted by Defendants uncovered that the remaining patents in the Avago LED portfolio were sold to Plaintiff, Bench Walk Lighting.

> 90. Upon information and belief, Defendants were aware of the sale of the entire set of patents from Avago.

> 91. Upon information and belief, Defendants risks of infringement of the patents-in-suit were either known or were so obvious that they should have been known.

(D.I. 25-1 ¶¶ 88-91, 116-119, 146-149, 178-181, 211-214, 245-248, 276-279,

307-310, 365-368, 397-400, 431-434)

BWL argues that it should be permitted to add these paragraphs to show that Defendants "were aware of the sale of the entire set of patents from Avago," a third party that allegedly sold different subsets of its patent portfolio – which include the asserted patents – to various companies including BWL. (D.I. 25 at 4) But even taking those allegations as true, the SAC fails to state a claim for willful infringement. Even if Defendants were aware that Avago had sold a large set of patents, the proposed amendments to the SAC fail to add any facts to show that Defendants knew of the asserted patents, let alone any facts to show how or why it would be plausible to infer that the risks that its products would infringe the asserted patents "were either known or were so obvious that they should have been known." (*See e.g.*, D.I. 25-1 ¶ 91)

## C. BWL's Proposed Amendments to its Direct Infringement Allegations as to Counts 1, 2, 3, 4, 8, 10, and 14 Do Not Satisfy the Requirements of Rule 8

BWL's "additional factual support" in its proposed SAC to allege direct infringement claims as to 7 patents falls short of stating a plausible claim under Rule 8. BWL incorrectly contends that Defendants are requiring BWL "to prove the asserted claims" at the pleading stage. (D.I. 25 at 2) (citing *Nalco v. Chem-Mod. LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (emphasis in original). Rather, Defendants are arguing that BWL has failed to meet the pleading requirements articulated in *Iqbal* and *Twombly*.

### 1. BWL's Direct Infringement Allegations as to Counts 1, 2, 3, 4, 8, 10, and 14 Fail to Address the Deficiencies in the FAC

On the 7 challenged patents, BWL alleges that the accused products infringe, absent facts linked to the products themselves. These are conclusory allegations, which are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

On Count 1, BWL improperly argues that the "additional diagrams, photos, and explanatory text" in the proposed SAC "demonstrates how the accused OSTAR Headlamp Pro

meets all elements of claim 1 of U.S. Patent No. 6,325,524." (D.I. 25 at 2) BWL has not provided any factual details about the OSTAR Headlamp Pro to plausibly suggest OSTAR Headlamp Pro meets all the limitations of claim 1.

On Counts 2 and 4, BWL argues the "SAC provides additional factual support" relating to Defendants' "secret" information about the accused products. (D.I. 25 at 2-3) Arguing that certain information is secret is not a substitute for pleading "*some facts*" to plausibly allege infringement. *See N. Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017) (emphasis in original). Regardless, these "additional factual" allegations are untethered to any specific attribute about the accused products to show they infringe the corresponding claim limitations.

For example, on Count 2, simply copying claim language, and without attempting to link any of the additional allegations in its SAC to LZ1-00CW02, the accused product, BWL alleges on information and belief that "photo-curing is a dominant technique for encapsulant curing and provides significant benefits," citing two scientific publications of a general nature. (D.I. 25-1 ¶ 113) But BWL's allegations are devoid of facts tying any specific attribute of LZ1-00CW02 to the claimed "photocurable medium" limitation of the asserted patent. There are also no allegations to plausibly suggest that LZ1-00CW02 has a "photocurable medium" with the claimed features ("sets upon exposure to light of a curing wavelength" and "sets in a time less than that required for a change in concentration of said phosphor in said phosphor layer over said LED of more than 0.5 percent") to demonstrate infringement of Count 2. (*See id.* ¶¶ 112-113)

BWL also does not meet the pleading standard on Count 4. For instance, BWL again parrots claim language, points to purported "technical information such as CAD and optical simulation files on its websites for certain related products" and, without factual support, alleges

on "information and belief, this data is applicable to the accused LV W5AM." (D.I. 25-1 ¶ 175) Without any support, BWL also alleges that "the typical fast vs slow axis can be 3x difference or more." (*Id.*) These generic allegations, ostensibly pertaining to "certain related products," fail to plausibly suggest that LV W5AM includes the claimed feature ("a molded encapsulation layer wherein said molded encapsulation layer is shaped to direct light emitted by said emitter … [and] reduces a difference in beam divergence between a fast-axis and a slow-axis). (*See id.*)

Similarly, on Counts 3, 8, 10, and 14, the "additional factual support" in BWL's proposed SAC merely repeats the claim language without tying the claims to any specific characteristic of the accused products to plausibly suggest that they infringe the corresponding claim limitations. (D.I. 25 at 3) For instance, on Count 3, citing a scientific publication of a general nature, BWL alleges on "information and belief, curing the phosphor mixture via irradiation to minimize the time period in which phosphor particles settle is a dominant technique and provides significant benefits." (D.I. 25-1 ¶ 143) But these non-specific allegations do not plausibly suggest that fabricating a Duris S5 White LED includes the step of "irradiating said dispensed mixture [of a bead of a mixture of photo curable epoxy and phosphor particles] in a time period that is less than the time period in which said phosphor particles settle wherein said time period is less than 1 second," as claimed. (*See id.*)

On Count 8, BWL alleges without factual support, that "OSLUX LED is available with a lens or lenses, which are analogous to a diffractive optical element optically coupled to OSRAM LED chips to diffract emitted light. Further, a cover window may function as a diffractive optical element." (D.I. 25-1 ¶ 301) But there are no allegations to plausibly suggest how a "uniform rectangular pattern" or "rectangular illuminated image" is obtained, and that OSLUX LED has a diffractive optical element, as claimed. (*See id.*)

On Count 10, BWL alleges on information and belief, without any factual basis, that "SFH 4356 is manufactured by separating the encapsulated first individual lead and the second individual lead from the first line of leads and the second line of leads." (D.I. 25-1 ¶ 362) Beyond these conclusory statements, there are no allegations to plausibly suggest that the limitation ("physically connecting the line of first leads to the line of second leads with a rail"), in the specified manner as claimed, is present during the manufacturing steps of SFH 4356. (*See id.*)

Finally, on Count 14, BWL alleges on information and belief that "OSLON LX ECE comprises a printed circuit board." (D.I. 25-1 ¶ 494) Again, beyond these conclusory statements, there are no allegations to plausibly suggest that OSLON LX ECE includes a "printed circuit board," as claimed. (*See id.* ¶¶ 494, 495)

In sum, BWL's proposed SAC "consist[ing] of a few cosmetic changes" is insufficient to overcome Defendants' challenges to the pleading requirements under Rule 8. *Kundratic v. Thomas*, 407 F. App'x 625, 630 (3d Cir. 2011).

>    **2.** **BWL's Motion for Leave to Amend Should be Denied to the Extent it Seeks to Assert Infringement Over Products Previously Voluntarily Dismissed From the Case**

Because BWL, in the SAC, asserts that certain accused products infringe that it previously dropped from the case and seeks to "reserve[] the right to include additional infringed products into the definition of [asserted patent] Accused Products that are either known to BWL or revealed during discovery" (*see e.g.*, D.I. 25-1 ¶ 76 for Count 1)[2], BWL's motion for leave to amend should be denied to the extent that BWL seeks to assert (or reserve the right to assert) infringement of products previously accused of infringement in the original complaint but

---

[2] BWL uses identical language for all 14 counts. (*See, e.g.*, D.I. 25-1 ¶¶ 104, 135, 164, 197, 233, 262, 294, 325, 351, 383, 414, 453, 485)

dismissed in the FAC.

BWL should not be allowed to reassert that certain Defendants' products infringe the patents-in-suit when it expressly dropped its claims against such products in its first amended complaint. In its original complaint, BWL identified over 250 products as "[e]xemplary infringing instrumentalities" for the 14 asserted patents.[3] In the FAC, BWL identified 14 specific accused products and ceased arguing that the remaining products infringed any asserted patent.[4]

In its proposed SAC, BWL seeks to reargue that certain previously accused products infringe the asserted patents. For instance, in Count 8, BWL's original complaint names the following accused products" OSLUX LEDs (LUW F65N, F65G, FQ6N), SFH 4645." (D.I. 1 ¶ 178) In its FAC, however, BWL alleges only that a single product with the OSLUX family of products – "OSLUX LEDs (LUW F65G)" as the accused product. (D.I. 13 ¶ 184) Thus, BWL ceased alleging that LUW F65N, FQ6N, and SFH 4645 are accused products as to Count 8. But in the proposed SAC, BWL is attempting to recapture these dropped products by alleging that all "OSLUX LEDs" are infringing products. (D.I. 25-1 ¶ 293) Moreover, BWL seeks to "reserve[] the right to include additional infringed products into the definition of [asserted patent] Accused

---

[3] For instance, BWL identified 4 accused products for Counts 1, 5, 6 and 8 (D.I. 1 ¶¶ 30, 110, 136, 178), over 20 accused products for Counts 2, 3, 4, and 13 (*id.* ¶¶ 48, 69, 87, 292), nearly 10 accused products on Counts 10 and 11 (*id.* ¶¶ 220, 243), over 40 accused products on Count 12 (*id.* ¶ 264), and over 70 accused products on Count 14 (*id.* ¶ 319).

[4] The 14 specific products named in BWL's FAC are as follows: OStar Headlamp Pro for Count 1 (D.I. 13 ¶ 31); LZ1-00CW02 for Count 2 (*id.* ¶ 50); Duris S5 White LED for Count 3 (*id.* ¶ 72); LV W5AM for Count 4 (*id.* ¶ 91); LE UW U1A4 for Count 5 (*id.* ¶ 114); SFH 4059SR for Count 6 (*id.* ¶ 140); OSRAM Color on Demand Technology LEDs for Count 7 (*id.* ¶ 161); OSLUX LED, LUW F65G for Count 8 (*id.* ¶ 184); OSRAM Micro SIDELED, LG Y876 for Count 9 (*id.* ¶ 206); SFH 4356 Infrared Emitter Array for Count 10 (*id.* ¶ 227); OSRAM DISPLIX Black, LRTBGRUG for Count 11 (*id.* ¶ 251); OSRAM Duris E5 for Count 12 (*id.* ¶ 273); OSLON Black Flat, LY H9PP for Count 13 (*id.* ¶ 302); and OSLON LX ECE for Count 14 (*id.* ¶ 329).

Products that are either known to BWL or revealed during discovery." (*See e.g.*, D.I. 25-1 ¶ 76 for Count 1)

BWL should not be permitted to reassert that previously accused products infringe. BWL made a conscious, deliberate and strategic decision to drop over 200 accused products in its amended complaints. Accordingly, BWL has waived its ability to reassert infringement of those products again in this case. *See Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132, 1161-62 (N.D. Cal. 2003) (denying plaintiff's motion for leave to amend its complaint for a second time to add an accused product against which the plaintiff had previously alleged infringement in its original complaint, but failed to reallege in an amended complaint.").[5] BWL's decision cannot be described as an "inadvertent" omission, as it involves not one or even a few products, but hundreds of products. *See Reiffin*, 270 F. Supp. 2d at 1161 (rejecting plaintiff's argument that omission of Windows CE, an accused product, in amended complaint was "inadvertent" and noting "[i]t is plaintiff, however, who has failed to reallege claims of infringement of Windows CE in the FAC [First Amended Complaint] and plaintiff who must suffer the consequences: a waiver of those claims.").

---

[5] *See also Blue Spike, LLC v. Texas Instruments, Inc.*, No. 6:12-CV-499, No. 6:12-cv-576, 2014 WL 11829328, at *4 (E.D. Tex. Dec. 22, 2014) (recommending dismissal of claims against a product that was removed in an amended complaint because defendant had reason to believe that plaintiff was dropping the separate infringement claims against that product), *report and recommendation adopted*, No. 6:12-CV-499, 2015 WL 11199061 (E.D. Tex. Apr. 24, 2015); *Addamax Corp. v. Open Software Found., Inc.*, 149 F.R.D. 3, 5 (D. Mass. 1993) (noting, in the context of a motion to amend under Fed. R. Civ. P. 15 that "[a]lthough the rule provides that 'leave shall be freely given when justice so requires,' it is clear that in granting leave to amend, the court has the power to grant leave upon certain conditions. One of those conditions may properly be that claims contained in the original complaint but not included in the amended complaint be considered dismissed with prejudice.") (internal citations omitted);*cf. Wi-Lan Inc. v. Sharp Elecs. Corp.*, No. 15-379-LPS, D.I. 186, Memorandum Order at 2 (D. Del. Sep. 22, 2017) (attached as Exhibit A) ("Where appropriate, the Court can enter a dismissal with prejudice even if the plaintiff files its Rule 41 motion specifically seeking a dismissal without prejudice.").

BWL's withdrawal of the aforementioned products from its amended complaints should be considered voluntarily dismissed from this case with prejudice as to those products. *See Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, No. 17-269-RGA, D.I. No. 75 (D. Del. Mar. 9, 2018) (Oral Order) (attached as Exhibit B) (noting, in the analogous context of dismissing claims and patents that, "[w]hen theories of liability are dropped in the litigation of a case, they should not be dropped until Plaintiff chooses to reassert them. Thus, I tend to think that, as presented, the withdrawal should be with prejudice.") Defendants reasonably believed that BWL withdrew the aforementioned products in its amended complaints to avoid certain defenses and Defendants planned for their discovery and defenses accordingly. Hence, any attempt by BWL to again accuse these products at a later stage in the case would be unduly prejudicial to Defendants.

Therefore, BWL should not be permitted to use its motion for leave to amend to accuse products of infringement that it previously voluntarily removed from the case.

## D. BWL's Proposed New Allegations Regarding the Named Defendant Entities Do Not Sufficiently Plead a Theory for Joint Liability

BWL also seeks to add new parties and factual allegations regarding certain Defendants to plead that each Defendant is "individually jointly and severally liable" for the alleged acts of infringement. BWL proposes that this should be allowed under a laundry list of theories: "the single business, common business enterprise; joint enterprise; vicarious liability; joint tortfeasor; contractual direction and control; effective control; veil piercing; and agency doctrines." (D.I. 25-1 ¶ 57) But each of these theories has separate and unique pleading requirements, none of which are met here. *See, e.g.*, *StrikeForce Techs., Inc. v. PhoneFactor, Inc.*, No. 13-490-RGA-MPT, 2013 WL 6002850, at *4 (D. Del. Nov. 13, 2013) (a "veil piercing" theory under an alter-ego test requires showing at least "(1) a lack of attention to corporate formalities, such as where the assets of two entities are commingled, and their operations intertwined, or where a corporate

parent exercises complete dominion and control over its subsidiary and (2) the use of the corporate form would cause fraud or a similar injustice") (internal citations omitted); *id.* at *5 (an agency theory of veil-piercing "does not apply solely because the parent has dominion and control over the subsidiary….[O]nly the conduct shown to be instigated by the parent may be attributed to the parent"); *Akamai Tech., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc) ("A joint enterprise requires proof of four elements: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control."); *Implicit, LLC v. NetScout Sys., Inc.*, No. 2:18-cv-00053-JRG, 2019 WL 127115, at *2 (E.D. Tex. Jan. 8, 2019) (noting that "vicarious liability" covers several different types of claims, the pleading standards of which cannot be met by simply stating that an entity is "liable for the conduct of its subsidiaries, affiliates, and related entities under the doctrines of alter ego and single business enterprise").

While BWL does not commit to any specific theory, the fundamental premise underlying BWL's proposal to treat all Defendants as a collective entity is that all of the Defendants operate as one group of indistinguishable entities called the Osram Licht Group. In other words, at minimum, BWL must show that each of the Defendants acts on behalf of the others such that an action by one should be treated as committed by another. BWL's proposed amendments fail to meet this threshold requirement for two independent reasons.

First, the SAC still fails to describe acts of infringement specific to any particular Defendant. Before BWL can attempt to attribute the actions of one Defendant to any other(s) or show why that attribution is reasonable, it must first identify the underlying acts of infringement.

Defendants (and the Court) cannot be expected to understand whether a joint or vicarious liability claim is plausible when BWL has failed to identify the party anchoring that liability. *See Promos Techs., Inc. v. Samsung Elecs. Co. Ltd.*, No. 18-307-RGA, 2018 WL 5630585, at *3 (D. Del. Oct. 31, 2018) ("Rule 12(b)(6) requires a complaint alleging infringement against multiple defendants to 'adequately identif[y] specific infringing acts' of each defendant."). For example, BWL admits that the LEDVANCE entities are no longer part of the OSRAM Licht Group (D.I. 25-1 ¶¶ 38-39), but nonetheless alleges that they can be lumped together with the other Defendants because they were part of the Group "during the relevant period of infringement" (*id.* ¶ 39). But BWL fails to identify what that period is, what kind of infringement took place during that period, or who committed that infringement and how. Absent that information, the LEDVANCE defendants lack sufficient notice of why BWL thinks they should be held responsible for any particular act of infringement.

Second, the only Defendant BWL alleges could be held responsible for the acts of any other is OSRAM Licht AG. (*See* D.I. 25-1 ¶¶ 20-29 (alleging that "the named Defendant subsidiaries of Osram Licht AG act as the agent of Osram Licht AG," but not of any other Defendant)) But BWL's attempt to hold OSRAM Licht AG responsible for the actions of the Defendant subsidiaries as a collective entity still falls short. BWL proposes to add allegations stating that:

- OSRAM Licht AG is the corporate parent of 96 OSRAM entities (D.I. 25-1 ¶ 20);

- The "OSRAM Licht Group" consists of OSRAM Licht Group "and its subsidiaries" (*id.* 21-22)

- The OSRAM Licht Group "is managed centrally by the Managing Board of OSRAM Licht AG," which is "responsible for the operating activities of the

OSRAM Licht Group" (*id.* ¶¶ 23-24)

- "Each of the named Defendants were or are part of … the OSRAM Licht Group" (*id.* ¶ 25)

- Upon information and belief, the individual financial business operations of the OSRAM entities that make up the OSRAM Licht Group are "presented as a single business operation under the consolidated financial statements of…OSRAM Licht AG." (*id.* ¶¶ 25-26)

- OSRAM Licht AG "head[s]" a group of enterprises, provides "technical and financial support" to those enterprises, and separately "also operates individually" in the development, manufacture, and distribution of the accused. (*id.* ¶¶ 27-28.)

But even assuming it is true that the subsidiary Defendants are centrally managed and supported by OSRAM Licht AG, those facts do not establish a plausible inference that OSRAM Licht AG directed or authorized any particular act of infringement by any other Defendant such that it can be held responsible for those actions under an agency theory of liability. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998)("[A] court must avoid 'the notion that a parent company can be held liable for the obligations of a subsidiary [under the agency theory] purely on the basis of domination and control.") (internal quotation marks omitted); *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) ("[C]ourts have refused to pierce the veil even when subsidiary corporations use the trade name of the parent, accept administrative support from the parent, and have a significant economic relationship with the parent."). Nor do they meet the standards required under more intensive theories of pleading veil-piercing. For example, an alter-ego theory of liability would require facts showing an "abuse of the corporate form" such as "gross undercapitalization, failure to observe corporate

formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Pearson*, 247 F.3d at 484-85. None of those facts are pleaded in BWL's proposed SAC.

Because BWL fails to connect its new pleadings as to the Defendants' corporate structures to a theory of liability for which relief could be granted, the proposed amendments regarding Defendants' corporate relationships should be denied as futile.

## V. CONCLUSION

For the reasons set forth above, BWL's motion for leave to file a SAC should be denied.

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
nhoeschen@shawkeller.com
*Attorneys for Defendants*

OF COUNSEL:
Srikanth K. Reddy
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1209

Neel Chatterjee
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA 94063
(650) 752-3100

Dated: July 17, 2019